UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

SANTIAGO VAZQUEZ, *pro se*;

    Plaintiff,

vs.

THEO GIBBS, LISA GIBBS, JIM KINSEY, FRED JONES,
CHARLES HILL, THEODORE M. DiBIASE, JR., GLOBAL
ACCOUNTABILITY CORP., A MONTANA CORPORATION

    Defendant(s).

_____/

FILED BY_____D.C.

AUG 12 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## COMPLAINT

Plaintiff, SANTIAGO VAZQUEZ, a Florida resident ("Plaintiff" or "Vazquez"), hereby brings this action against Defendants THEO GIBBS, LISA GIBBS, JIM KINSEY, FRED JONES, CHARLES HILL, THEODORE M. DiBIASE, JR., and GLOBAL ACCOUNTABILITY CORP., a Montana Corporation, for damages. In support thereof, Plaintiff states as follows:

### PRELIMINARY STATEMENT

1. While so many Americans saw their lives reduced to ashes by a virus of biblical proportions, countrywide shutdowns and job losses, unstoppable wildfires, hurricanes, tornadoes, political unrest, and sweeping riots. A very small percentage of Americans saw the events of 2020 as an opportunity to line their pockets by defrauding the federal government and other citizens.

2. Global Accountability Corp. was founded during the spring/summer of 2020.

While the pandemic raged and protests spread across the country, Defendant Theo Gibbs, launched "Global Accountability Corp." ("GAC"). GAC's inaugural product, the "Accountability Badge", whose stated origin and purpose are described on the GAC website by Defendant Theo as follows:

> *"The Accountability Badge and My Safe Id were invented out of necessity. In a covid conscientious and challenging relationship environment between members of the community and law enforcement, the Accountability Badge and My Safe ID have joined together to create a safer and more accountable place for us all."*

3. Theo states in a promotional video that the idea for the Accountability Badge came to him while he watched the events that unfolded after the murder of George Floyd in Minnesota in May of 2020.

4. The Company's website and other promotional information suggests that the Company was formed, and the Accountability Badge was created to provide a de-escalation through the instantaneous sharing of officer and citizen information through the use of NFC chips embedded in the officer's badge and embedded in a placard carried by the citizen. An enabled smart phone will receive and display the requested information. This no contact transfer of information would likely de-escalate officer encounters.

5. As noble as the Accountability Badge's mission may sound, Global Accountability Corp. is little more than a fraudulent shelter that Theo Gibbs and the other Defendants are using in a Ponzi type scheme whose sole intention is to generate capital that the Defendants are using for their personal living expenses.

## GENERAL ALLEGATIONS

### The Parties

#### Plaintiff

6. Plaintiff SANTIAGO VAZQUEZ is a resident of Fort Lauderdale in the State of Florida.

## Defendants

7. Defendant, THEO GIBBS is a resident of the State of Florida, and the Founder/CEO of GLOBAL ACCOUNTABILITY CORP.

8. Defendant, LISA GIBBS is a resident of the State of Florida, the wife of THEO GIBBS, and the Secretary/Board Liaison for GLOBAL ACCOUNTABILITY CORP.

9. Defendant, JIM KINSEY, is a resident of Missoula, Montana, and the CMO of GLOBAL ACCOUNTABILITY CORP.

10. Defendant, FRED JONES, is a resident of Missoula, Montana, and the CFO of GLOBAL ACCOUNTABILITY CORP.

11. Defendant, THEODORE DiBIASE, JR. is a resident of Clinton, Mississippi and is recently affiliated with GLOBAL ACCOUNTABILITY CORP. as a board member.

12. Defendant, GLOBAL ACCOUNTABILITY CORP. is a Montana Corporation formed in or about May 2020. The Company has operations in the State of Florida through its CEO and other participants.

## Reservation to Name Additional Defendants

13. In addition to the individuals and entity herein, there are likely other parties who may well be liable to Plaintiff but respecting whom Plaintiff currently lacks specific facts to permit Plaintiff to name such person or persons as a party defendant. By not naming such persons or entities at this time, Plaintiff is not waiving its right to amend this pleading to add such parties, should the facts warrant the addition of such parties.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorneys' fees, and is an action between citizens of different states.

15. This Court has personal jurisdiction over Defendants because: (a) Defendant GAC is a business entity operating, present, and/or doing business within this jurisdiction, and (b) Defendants' tortious and fraudulent conduct occurred within this jurisdiction.

16. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391, as the causes of action alleged herein arose in Fort Lauderdale, Florida.

**FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

17. This is a civil action brought by Plaintiff against Defendants who, acting individually and acting in connection with others, both known and unknown, defrauded Plaintiff of more than Seventy-Eight Thousand Dollars ($78,000) by misrepresenting several key facts about the Company and its products, well as plainly lying about the numbers of patents owned by the Company, and its financial condition. Defendants also made significant promises to Plaintiff as inducement for Plaintiff's participation and investment, that were flatly broken and reneged on later.

18. Plaintiff was introduced to Theo in approximately February of 2021 by an associate who had heard about Theo's Accountability Badge. This associate knew of Plaintiff's career as a law enforcement officer and his desire to improve policing conditions in Florida and across the country.

19. During the Plaintiff's first interaction with Theo, Theo made the following representations to Plaintiff:

   a. Global Accountability Corp. was poised to generate untold amounts of revenue.

   b. Theo and the Company owned (10) patents and were preparing to secure additional patents for Theo's "inventions".

   c. The Company was close to securing a significant amount of investment capital

that would be sued to complete its software development and launch the products across the country.

    d. That the Company had already produced a significant number of the Accountability Badges and My Safe ID placards.

    e. That the Company was on the verge of signing government and municipal contracts to sell the badges and ids to city and state governments.

20. Theo also made significant promises to the Plaintiff during their first meeting, that persisted thereafter. These promises included:

    a. Plaintiff would receive 250,000 fully vested, non-dilutable shares in the Company.

    b. Plaintiff would be named the President and COO of the Company as well as hold a seat on the board of directors.

    c. Plaintiff would be in charge of the day-to-day operations with a Vice President that would be hired later.

    d. Plaintiff would receive his investment capital back when the next investor came aboard. Theo stated outright that the investor would come aboard within a matter of days if not a couple of weeks.

21. Plaintiff is a retired Dade County Deputy Sherriff Seergeant with over 23 years on the force. He does not have significant or even adequate investment experience to analyze the risks and potential pitfalls involved with a startup organization. Further, Plaintiff lacked the basic understanding of how to perform diligence on a potential investment subject.

22. Plaintiff reviewed the information provided by Theo, as well as a number of promotional videos produced by Theo and the Company and broadcast on YouTube.

23. Plaintiff also found an article about Theo and the Company that was published

in a Montana newspaper.

24. As reading this information, and seeing the promotional videos, Plaintiff decided to accept Theo's offer. Specifically, Plaintiff agreed to invest capital for the ongoing development of Theo's software and engage with law enforcement professionals known to Plaintiff as a means of introducing the Accountability Badge to agencies throughout Florida and other states.

25. When he initially joined the Company, the Plaintiff was treated very well by Theo and the other Defendants. Plaintiff was introduced to the other Defendants on a Zoom call, and things seemed to be as described.

26. For the next several weeks, Plaintiff began scheduling and attending meetings with potential customers in the law enforcement community all over Florida, at Plaintiff's expense. During this time, Plaintiff also began paying for the development of the Defendant's software.

## Inconsistencies in the Story

27. After several weeks of working 8-10 hours per day scheduling and driving to meetings, Plaintiff began to question some of Theo's decisions. Plaintiff also questioned the actual role of the Board of Directors.

28. Within weeks of joining the Company, the Plaintiff noticed that the Company did not have a business plan, financial statements, and other key documents that one would presume an organization on the edge of national success would have in place. Plaintiff also asked what the CFO and other members of the executive staff were doing because none of the required work appeared to be underway.

29. Plaintiff worked more than 40-60 hours per week during this period of time. This was filled with travel and hotel stays at Plaintiff's expense.

30. The Plaintiff also became increasingly wary of the fact that Theo had not produced the "Employment Agreement", or Company shares as promised. The promissory note that Theo did produce was one sided and did not contain a repayment date. Plaintiff refused to sign it, and Theo promised to have another agreement drafted by his attorneys.

31. During a Zoom call in late June or 2020, Plaintiff was informed casually that Theo had accepted investments in the form of 'Promissory Notes" from other investors since the Plaintiff had joined the Company.

32. Plaintiff was stunned and confused at hearing this, because he had been promised that he would be repaid when another investor came into the Company. Plaintiff was also in disbelief because he was promised by Theo and other members of the board that all decisions regarding hiring executives and expenditures would require a vote by the board. This had not occurred.

33. Finally, in early July 2021, the Plaintiff met with Theo for an early morning meeting that had been scheduled by Plaintiff with a high-ranking officer in a Florida police agency. Following the meeting, the Plaintiff asked Theo about his acceptance of additional investment capital and why he did not have a board vote before accepting the investment.

34. Theo became irate at Plaintiff's questions and said that it was none of Plaintiff's business. Theo went on to say that he could use the funds that came into his Company however he wanted. Theo also indicated in this conversation that he was using the funds for his living expenses.[1,2]

35. Although dismayed, Plaintiff thought he could have a discussion with the rest of the board of directors and come to some understanding as to the rule of governance of the Company going forward.

36. Shortly after their meeting, Theo and other Defendants traveled to Texas to meet with

---

[1] Theo had relocated his entire family from Missoula, Montana to Central Florida in early 2021.
[2] Plaintiff discovered later that contrary to Theo's assertions regarding his history of business ownership, he actually had left his job as a sales rep at T-Mobile shortly before launching Global Accountability Corp.

an investor. Plaintiff did not attend.

37. Theo reported that the investor was not "the right guy" for the Company upon his return. Theo also informed Plaintiff that he had met Ted DiBiase, Jr. during his trip and that Mr. DiBiase would be joining the Company as a board member and shareholder.

38. Plaintiff found himself revisiting the discussions that he had with Theo prior to joining the Company. Plaintiff immediately recognized that this was a pattern. That Theo made the same representations and promises to each new party as inducement to get them to invest.

39. During a Zoom meeting in late July, Plaintiff raised his concerns with Theo and the board of directors. The response was a series of shouting tirades by Theo where he called Plaintiff a liar and accused Plaintiff of trying to steal his patents and his software. The other members of the Board of Directors seemed to have been unusually complaint given the circumstances which led the Plaintiff to believe that the other members of the board are working in concert with Theo and Lisa Gibbs.

40. The Plaintiff demanded that the employment agreement that he had been promised weeks ago to be sent over immediately and that the shares that he was guaranteed to receive be delivered immediately. Theo responded that no one had received shares yet, and when the shares were delivered, they would be dilutable and would vest over a (3) year period.

41. Plaintiff demanded the return of his invested capital immediately. Theo responded that he did not owe him anything. Theo then demanded that the Plaintiff turn the software login credentials over to him. Plaintiff said that would not happen until he had been repaid.

42. Plaintiff received a letter from Theo's corporate attorneys a few days later that set a deadline of Monday, August 9, 2021, for Plaintiff to deliver the software or he would face civil penalties. Plaintiff did not respond.

43. On August 5, 2021, Plaintiff formally filed a complaint against the Defendants listed herein with the United States Securities Exchange Commission and the Florida Office of Financial

Regulation, Securities Division. The claims stated in those complaints mirror those detailed herein.

## Uncovering the Truth

44. Following his last call with Theo and the other Defendants, and while preparing to file complaints against the Company and its directors, Plaintiff uncovered a number of misrepresentations and lies that Theo had told him prior to Plaintiff joining the Company. Plaintiff discovered that:

   a. The Company did not have any contracts that were pending or even in discussion. In fact, the only law enforcement or government contacts that had been made were made by Plaintiff.

   b. Theo has received in excess of $300,000 in investment capital none of which has been used for the development of the Company's software, or production of badges and/or ids. The only capital spent on the development of the Software is the amounts paid for by the Plaintiff. With the exception of monies paid to the Law firm that represents the Company, a very small amount of capital has been used towards the development of the business.

   c. The Company and Theo together have a single provisional patent that was filed shortly after the Plaintiff joined the Company.

   d. No shares had been issued to anyone, and when pressed on the subject, Theo stated that anyone who wanted their shares would need to send in a $25 check. This had never been mentioned before the July Zoom call.

   e. Most of the work that had been done towards the launch of the Company had been done since the Plaintiff joined the Company.

45. The promises that Theo made to the Plaintiff that were reneged on includes:

   a. Plaintiff would be repaid from the next investor's capital which would be millions of dollars.

    b. Plaintiff would run the day-to-day operations.

    c. All executive hiring would require a board vote.

    d. Acceptance of additional investment capital would require a board vote.

    e. Expenditures over $1000 would require a board vote.

    f. Employment agreements would be delivered within days, they never have been delivered.[3]

    g. Non-dilutable, fully vested shares would be delivered within days. Months later Theo said no shares had been issued, and if the Plaintiff wanted shares he would need to send in a check for processing and that the shares would be dilutable and would require a vesting period.

    h. The technology that Theo professes to have invented and the patent that he claims to have, are a fabrication. The NFC chip technology that is the basis of the Accountability Badge's patent claims have been protected for nearly 15 years by various tech giants. The provisional patent that Theo has received will undoubtedly fail the inspections and reviews required for full patent protection.

46. If Theo and the other Defendants had been honest about the Company's financial condition or the development of the products, or that the Company's founder had no actual business management experience, the Plaintiff would not have invested.

47. Plaintiff attempted to create the illusion that Plaintiff was a part of the Company as an operator however, Plaintiff was never consulted about any corporate matters and the Company failed to honor any of its established policies.

48. To enforce its rights, Plaintiff has taken a considerable amount of time to prepare this

---

[3] Plaintiff took the step of having an attorney draft an employment agreement for him that was presented to Theo and the board. The flatly rejected it and scolded Plaintiff for engaging with an attorney without the Company's approval.

complaint pro se. The time spent and the loss of potential earnings are Defendants' liability as a result of their bad faith and otherwise.

## **COUNT I – AIDING AND ABETTING FRAUD**

Plaintiff realleges, and adopts by reference herein, Paragraphs 1 – 48 above, and further alleges:

49. To state a cause of action for aiding and abetting fraud, a plaintiff must allege: "(i) there existed an underlying fraud, (ii) he defendant(s) had knowledge of the fraud, and (iii) the defendant provided substantial assistance to advance the commission of the fraud."[4]

50. In the current action, the fact that Theo sales or promises to sale shares of his Company in exchange for executive positions, salary, expenses, shares in the Company, profit sharing, and operational responsibilities, knowing that the invested capital will be used to support Theo and the other Defendant's living expenses indicates that an underlying fraud in fact exists. As the owner and founder of the Company, and its board of directors, the Defendants are each aware of the fraud.

51. Theo and Lisa Gibbs have complete knowledge of the fraud as they are the architects and managers of said fraud. Theo took every step necessary to ensure that his lies and misrepresentations were believable. Assertions that are made in the various promotional videos that were filmed by Defendant Jim Kinsey are filled with representations that are untrue.

52. During a number of Zoom calls in June and July, Plaintiff raised his concerns to all of the Members of the Board who in turn defended Theo's decisions and actions. Indicating their participation and dedication to the scheme.

WHEREFORE, Plaintiff, SANTIAGO VAZQUEZ, a Florida resident, demands entry of a judgement against Defendants for an amount within the jurisdictional limits of this Court, including an award of interest on the amounts invested by Plaintiff.

---

[4] See, ZP No. 54 Ltd. Partnership v. Fidelity and Deposit Co. of Maryland, 917 So. 2d 368, 372 (Fla. 5th DCA 2005).

## COUNT II – PRIVATE SECURITIES FRAUD

Plaintiff realleges, and adopts by reference herein, Paragraphs 1 – 51 above, and further alleges:

53.     Private federal securities fraud allegations are based upon federal securities statutes and their implementing regulations. Section 10(b) of the Securities and Exchange Act of 1934 forbids (1) the use of employment of any deceptive device, (2) in connection with the purchase or sale of any security, and (3) in contravention of Securities and Exchange Commission rules and regulations.

54.     Further, Commission rule 10b-5 forbids, among other things, the making of any untrue statement of a material fact, or the omission of any material fact necessary in order to make the statements not misleading.[5]

55.     Almost every single detail of Theo's initial presentation to Plaintiff was a misrepresentation or an outright lie. The Company and Theo did not and do not own multiple patents, the Company does not have, and is not close to having contracts with city or state governments, the Company does not have an inventory of badges and id's ready to show interested parties, Theo does not have business management or entrepreneurial experience, Plaintiff was not paid back, employment was not granted, shares were not granted and a host of other misrepresentations that Theo made and the other Defendants either restated as a matter of fact or further fabricated to mislead the Plaintiff.

56.     Plaintiff is not a sophisticated investor and therefore relied entirely on the statements and inducements provided by Theo and the other Defendants when making his investment decision. If not for these misrepresentations, Plaintiff would not have invested and would not have lost most of his savings.

WHEREFORE, Plaintiff, SANTIAGO VAZQUEZ, a Florida resident, demands entry of a judgement against Defendants for an amount within the jurisdictional limits of this Court, including an

---

[5] See CFR § 240.10b-5 (2004)

award of interest on the amounts invested by Plaintiff, and ordering Defendants to cease and desist from any further attempts to raise capital. Where permissible, Plaintiff prays that this Court will enter an order requiring Defendants to deliver the provisional patent, and all existing products, plans, blueprints and other similar information and data so that when delivered Plaintiff will own all of the rights and title to the products.

## COUNT III – FRAUD IN THE INDUCEMENT

Plaintiff realleges, and adopts by reference herein, Paragraphs 1 – 55 above, and further alleges:

57.     To state a cause of action for fraud in the inducement, a plaintiff must allege the following: (i) a misrepresentation of a material fact; (ii) that the representor knew or should have known of the statement's falsity; (iii) that the representor intended that the representation would induce another to rely on it; and (iv) that the plaintiff suffered injury in justifiable reliance on the representation.[6]

58.     All of the claims that Theo made to the Plaintiff in their initial discussions, were false. There were no patents, there were no government contracts, the Company did not have products to show potential clients, Theo does not have experience running businesses, and he did not honor any of the promises that were made. Theo knew these statements were false when they were made. These are misrepresentations of material facts that were made solely to further convince the Plaintiff to invest in the Company. Theo knew that if he told the Plaintiff the actual facts regarding the Company, he would never have invested. Plaintiff invested in the Company exclusively as a result of his reliance on Theo's statements and misrepresentations.

59.     Plaintiff lost over $78,000 as a result of his reliance on the statements and misrepresentations that were made by Theo.

WHEREFORE, Plaintiff, SANTIAGO VAZQUEZ, a Florida resident, demands entry of a against

---

[6] See, *Danka Bus. Sys., Inc.* 991 So. 2d 941, 944 (Fla. 4th DCA (2008).

Defendants for an amount within the jurisdictional limits of this Court.

## COUNT IV – BREACH OF CONTRACT

Plaintiff realleges, and adopts by reference herein, Paragraphs 1 – 59 above, and further alleges:

60. To state a claim for breach of contract, a plaintiff must plead the existence of a contract, a material breach, and damages.[7] To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.[8]

61. During Plaintiff's first encounter with Theo, the Plaintiff was offered an executive position with the Company and a host of other perks and benefits. Theo's offer was accepted by the Plaintiff and a firm date was set for the Plaintiff to begin working. Shortly after accepting Theo's offer, Plaintiff began company board of directors' zoom meetings and scheduling meetings with potential clients for the Company. As consideration for Theo's offer, the Plaintiff invested more than $78,000 of his savings into the Company. The Parties have acknowledged the specific terms that were mutually agreed upon. Theo provided an agreement that spelled out the terms that were discussed. This agreement remains unsigned because Theo amended the amounts and details that were previously agreed upon.

62. As a direct result of Defendants' breach, Plaintiff has suffered over $78,000 in actual damages.

WHEREFORE, Plaintiff, SANTIAGO VAZQUEZ, a Florida resident, demands entry of a judgement against Defendants for actual damages caused as a direct result of Defendants' breach of the contracts and agreements between Plaintiff and Defendants.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all triable issues.

---

[7] See, *Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1272 (11th Cir. 2009).
[8] See, *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

## **RESERVATION OF RIGHTS**

Plaintiff reserves its right to further amend this Complaint, upon completion of its investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

Dated: August 12, 2021

Respectfully submitted,

*/s/ Santiago Vazquez*
Santiago Vazquez, *pro se*
4846 N. University Drive, Ste. 219
Fort Lauderdale, FL 33351
Telephone: (954)234-3414

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served by United States Mail, certified, first class, postage prepaid on August 13, 2021 on all counsel or parties of record on the Service List below.

*[signature]*
Santiago Vazquez, *pro se*

## SERVICE LIST

Mr. Theo Gibbs
309 Joy Haven
Sebastian, FL 32958
(406) 926-8436
ceo@globalaccountabilitycorp.com

Mrs. Lisa Gibbs
309 Joy Haven
Sebastian, FL 32958
(772) 237-0993
Secretary@globalaccountabilitycorp.com

Mr. Jim Kinsey
P.O. Box 805
Florance, MT 59833
(406) 239-7515
Jim.kinsey@globalaccountabilitycorp.com

Mr. Fred Jones
3436 South A Ave. W.
Missoula, MT 59801
(406) 239-4300
cfo@globalaccountabilitycorp.com

Mr. Charlie Hill
200 W. Cir. Apt. 4
Parkersburg, WV 26101
(681) 315-0260
Charlie.hill@globalaccountabillitycorp.com

Mr. Theodore DiBiase, Jr.
C/o Gregory A. McDonnell
Registered Agent for "GAC"
2806 Harmony Court
Missoula, MT 59801

Global Accountability Corp.
C/o Gregory A. McDonnell
Registered Agent
2806 Harmony Court
ceo@globalaccountabilitycorp.com
Missoula, MT 59801